UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA CONCEICAO SILVA, | Case No.: 09-CV-05768-LHK |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| JASON HEAD, PLC, a Virginia professional limited liability company; and JASON MATTHEW HEAD, individually and in his official capacity, | |
| Defendants. | |

Plaintiff Maria Conceicao Silva originally filed her motion for default judgment with Judge Ware on June 4, 2010. Dkt. No. 13 ("P.'s Mot."). On August 10, 2010, Plaintiff renoticed her motion for November 4, 2010 before this Court. Dkt. No. 15. Pursuant to Civ. L.R. 7-1(b), the Court finds this matter appropriate for resolution without oral argument. For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

In her December 9, 2009 complaint, Dkt. No. 1 ("Compl."), Plaintiff, an individual resident of Santa Clara County, California, alleges the following. On a date unknown to her, Plaintiff incurred a consumer credit debt ("the Debt") with Juniper Bank. Compl. 4. Plaintiff incurred the Debt primarily for personal, family or household purposes. *Id.* Defendants Jason Head, PLC and

Jason Matthew Head eventually obtained rights to the Debt. *Id.* 4-5. On or about December 18, 2008, Defendants' employee left the following message on Plaintiff's answering machine:

> Yes, this call is for Miss Maria Silva. This is Phyllis Jackson. I am calling from Jason Head Law Firm. This is not a collection agency. This is an attorney's office. Trying to speak with you of a civil matter. This matter is getting ready to go to Court. Your case number is 79769. I need you to speak – have – call someone who speaks English to this office to speak with me, in reference to this matter. I'll be here in this office until 9 o' clock p.m. Eastern Standard Time. And again, my number is 1-888-279-5764, extension 412. This is getting ready to go to Court. I need you to return my call. This is a civil matter, it's pending litigation. Thank you.

*Id.* 5.

In her complaint, Plaintiff claimed that this message entitled her to relief under the Federal Fair Debt Collection Practices Act ("Fair Debt Act"), 15 U.S.C. § 1692, and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), CAL. CIV. CODE §§ 1788-1788.33. *Id.* at 6-8. According to Plaintiff, this relief would include statutory damages, a statutory penalty, and the costs of her action and reasonable attorney's fees. *Id.* at 9.

On December 20, 2009, Plaintiff served Defendants with a Summons and her Complaint. Dkt. Nos. 5, 6. The court clerk entered default as to Defendants on March 4, 2010. Dkt. Nos. 10, 11. Plaintiff now moves the Court to enter a default judgment against Defendants under FED. R. CIV. P. 55(b)(2), P.'s Mot. 1, and requests an award of $3,000 in damages and $3,044.73 in attorney's fees. *Id.* at 12.

## II. LEGAL STANDARD

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted). After the clerk enters a party's default under FED. R. CIV. P. 55(a), the Court may enter a default judgment against the party. *See* FED. R. CIV. P. 55(b)(2). "A failure to make a timely answer to a properly served complaint will justify the entry of a default judgment." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560

2

(9th Cir. 1977)) (quotation marks omitted).  "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978)).  "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.  A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

### III.  ANALYSIS

#### A.  Jurisdiction

##### 1.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiff's 15 U.S.C. § 1692 claim under 15 U.S.C. § 1692k(d): "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs."  Plaintiff filed her complaint on December 9, 2009, 9 days short of a year from Defendants' alleged violation, which occurred on December 18, 2008.  In addition, this Court has supplemental jurisdiction over Plaintiff's CAL. CIV. CODE § 1788 claims under 28 U.S.C. § 1367.

##### 2.  Personal Jurisdiction

No federal statute governs personal jurisdiction in cases involving the Fair Debt Act.  *See Maloon v. Schwartz, Zweban & Slingbaum, L.L.P.*, 399 F. Supp. 2d 1108, 1111 (D. Haw. 2005). Therefore, California state law applies.  *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993)). California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."  CAL. CIV. PROC. CODE § 410.10.  Accordingly, as long as the requirements of the Due Process Clause of the United States Constitution are satisfied, this Court's exercise of personal jurisdiction over Defendants is proper.  *See Panavision*, 141 F.3d at 1320.

"Due process requires that a defendant have minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

3

*Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). "Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction." *Id.* Because Defendants have neither had "substantial" nor "continuous and systematic" activities in California, general jurisdiction is inapplicable. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872-73 (1984). In the Ninth Circuit, courts utilize a three-part test to determine whether specific jurisdiction applies to a particular defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotation and alterations omitted).

### i. Purposeful Availment

"Purposeful availment requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)) (quotation marks omitted). "The touchstone is whether the 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Gordy v. Daily News, L.P.*, 95 F.3d 829, 832 (9th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)). "The requisite connection, however, need not involve physical entry into the forum." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528 (1985)).

Here, Defendants performed an affirmative act through their agent—leaving a message on Plaintiff's answering machine—that would allow them to transact business in the forum state, i.e., collect Plaintiff's debt. Presumably, Defendants knew that attempting to collect debts in California

4

could subject them to liability there.  It is also likely that Defendants' employee in placing the call knew she was calling California.  Even though Defendants never physically entered the state, their employee's conduct created a connection with the forum state such that they should have reasonably anticipated being haled into a California court.  The fact that Defendants only had a single contact with the state does not change the analysis.  *Maloon*, 399 F. Supp. 2d at 1113 (finding personal jurisdiction over a defendant debt collector whose only contact with the forum was a single debt collection letter); s*ee Paradise v. Robinson and Hoover*, 883 F. Supp. 521, 525 (D. Nev. 1995) ("[I]t is well-settled that a single contact with the forum state, not involving the physical presence of the defendant, can be a sufficient basis upon which to establish jurisdiction over the defendant.") (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957)).

Moreover, this conclusion makes sense from a policy standpoint.  As explained by a fellow federal district court:

> Where an alleged debtor is located in a jurisdiction and receives documents from a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the [Fair Debt] Act, suits may be brought where the debtor . . . receive[s] the communications.  Otherwise, one could invoke the protection of distance and send violative letters with relative impunity, at least so far as less well-funded parties are concerned.

*Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993) (citations omitted).

### ii.  Arises Out Of

Plaintiff's claim clearly arises out of Defendants' forum-related conduct.  The message left by Defendants' employee on Plaintiff's answering machine forms the entire basis for Plaintiff's suit.

### iii.  Reasonable

As to the third requirement, courts "presume that an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (citing *Sher,* 911 F.2d at 1364).  "The burden of convincing [the court] otherwise is on [the defendant]." *Id.*  Here, this presumption of reasonableness will hold because Defendants have not submitted anything to suggest that specific jurisdiction is not reasonable.

Because the exercise of specific personal jurisdiction over Defendants comports with the requirements of due process, this Court will consider Plaintiff's substantive claims.

### B. Claims for Damages

#### 1. 15 U.S.C. § 1692k

Plaintiff first claims $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k. An individual who brings suit against "any debt collector who fails to comply" with the Fair Debt Act may claim "damages as the court may allow, but not exceeding $1,000." 15 U.S.C.A. § 1692k(a)(2)(A).[1] "In determining the amount of [statutory] liability[,] . . . the court shall consider, among other relevant factors— . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Plaintiff alleges that Defendants are "debt collectors" as defined by 15 U.S.C. § 1692a(6) and violated the Fair Debt Act in a number of ways, which, collectively, justify awarding her the statutory maximum in damages.

Under 15 U.S.C. § 1692a(6), a "debt collector" is, in part, "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." This definition can include attorneys. *See Riley v. Giguiere*, 631 F. Supp. 2d 1295, 1303 (E.D. Cal. 2009). Furthermore, courts do hold individual defendants who set and approve a company's collection policies liable under the Fair Debt Act. *See Cruz v. Int'l Collection Corp.*, 2008 WL 2263800, *2 (N.D. Cal. June 2, 2008) (holding allegations that a defendant set and approved a debt collection company's collection policies, practices and procedures were sufficient to state a claim that the defendant was liable for the acts of the company); *accord Piper v. Portnoff Law Assocs.*, 274 F. Supp. 2d 681, 689-690 (E.D. Pa. 2003) (holding that "individuals who exercise control over the affairs of a business may be held liable under the [Fair Debt Act] for the business' actions") (citation omitted).

---

[1] Although the statute also allows for the collection of actual damages, Plaintiff does not seek them. In any case, actual damages are not required to collect statutory damages. *See Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982) ("There is no indication in the statute that award of statutory damages must be based on proof of actual damages.").

1    Plaintiff's allegations establish that both Defendants are debt collectors. According to
2    Plaintiff's complaint, Defendant Jason Head, PLC's "principle purpose of" business "is the
3    collection of debts using the mails and telephone," and it "regularly attempts to collect debts
4    alleged to be due another." Compl. 3. Plaintiff also alleges that Defendant Jason Matthew Head
5    "sets and approves" Defendant Jason Head, PLC's "collection policies, practices, procedures and []
6    directed the unlawful activities described [in the complaint]." Compl. 4.

7    Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or
8    misleading representation or means in connection with the collection of any debt." The statute lists
9    several examples of conduct that violate this general prohibition. Plaintiff claims that Defendants'
10   message fits into four of these examples. First, Plaintiff claims that Defendants' message was a
11   "false representation of the . . . legal status of [her] debt." 15 U.S.C.A. § 1692e(2)(A). Second, she
12   claims the message was a "threat to take . . . action that [could not] legally be taken or that [wa]s
13   not intended to be taken." 15 U.S.C.A. § 1692e(5). Third, she claims the message "use[d a] false
14   representation or deceptive means to . . . obtain information concerning a consumer." 15 U.S.C.A.
15   § 1692e(10). Fourth, she claims the message constituted an "initial oral communication" by
16   Defendants that failed to disclose that they were "attempting to collect a debt and that any
17   information obtained [would] be used for that purpose." 15 U.S.C.A. § 1692e(11).

18   In determining whether a communication violates the Fair Debt Act, courts in the Ninth
19   Circuit "assess the impact that the [communication] would have on the least sophisticated debtor."
20   *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1460 (C.D. Cal. 1991) (citing *Swanson v.*
21   *Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)). "The 'least
22   sophisticated debtor' is an objective standard." *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp.
23   2d 1104, 1114 (C.D. Cal. 2005) (citing *Swanson*, 869 F.2d at 1227) (footnote omitted). Accepting
24   as true Plaintiff's allegation that no "lawsuit had been, was about to be, or would be instituted
25   against" her in connection with the Debt, *see* Compl. ¶ 17, Defendants' voicemail violated
26   §§ 1692e(2)(A), (5), and (10). Accepting as true Plaintiff's allegations that Defendants had
27   obtained rights to the Debt and were attempting to collect it, Compl. 5-7, Defendants' message also
28   violated § 1692(11). *See Hosseinzadeh*, 387 F. Supp. 2d at 1116 (holding that answering machine

7

1   messages not directly referencing the plaintiff's debt still violated § 1692d(11) because it referred
2   to the debt "indirectly").

3   The question, however, is whether Defendants' single voicemail warrants awarding Plaintiff the statutory maximum in damages. On the one hand, Plaintiff provides only a single example of Defendants' conduct that violates the Fair Debt Act. On the other hand, Defendants' message falsely threatened Plaintiff with completely non-existent litigation. Such a threat was clearly meant to intimidate and frighten Plaintiff and violated the express purpose of the Fair Debt Act, which is "to eliminate abusive debt collection practices." Nevertheless, the Fair Debt Act explicitly lists frequency and persistence as factors for the court to consider in awarding damages. A single occurrence is, by definition, infrequent. Therefore, the Court finds it would be inappropriate to award the statutory maximum. Instead, this Court awards Plaintiff $500 in damages under 15 U.S.C. § 1692k.

### 2. CAL. CIV. CODE § 1788.30(b)

Under CAL. CIV. CODE § 1788.30(b), "[a]ny debt collector who willfully and knowingly violates" the Rosenthal Act shall "be liable to the debtor . . . for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000)." Plaintiff alleges that Defendants are "debt collectors" as defined by CAL. CIV. CODE § 1788.2(c) and "willfully and knowingly" violated the Rosenthal Act in two ways. First, Plaintiff claims that Defendants violated the prohibition that "[n]o debt collector shall collect or attempt to collect a consumer debt by means of . . . [a] false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made." CAL. CIV. CODE § 1788.13(j). Second, Plaintiff claims that Defendants violated CAL. CIV. CODE § 1788.17, which incorporates provisions of §§ 1692b to 1692j of the Fair Debt Act. Generally, violations of the Fair Debt Act also constitute violations of § 1788.17. *See Hosseinzadeh*, 387 F. Supp. 2d at 1118.

Defendants would both be "debt collectors" under the general definition set forth in CAL. CIV. CODE § 1788.2(c) because they, "in the ordinary course of business, regularly . . . engage[] in debt collection." Defendant Jason Matthew Head, however, appears to be the "managing attorney"

of Jason Head, PLC. Compl. 3. Thus, he is exempted from the statutory definition of "debt collector," which excludes "an attorney or counselor at law." *See* CAL. CIV. CODE § 1788.2(c); *Navarro v. Eskanos & Adler*, 2007 WL 549904, *4 (N.D. Cal. Feb. 20, 2007) ("The statute makes clear that it does not apply to attorneys."). Nevertheless, Defendant Jason Head, PLC is still liable because law firms are not exempted. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 548 (N.D. Cal. 2005) ("Since the legislature specifically excluded attorneys from the statute but was silent on law firms, this Court presumes that the legislature did not intend to exclude law firms.").

Accepting as true Plaintiff's allegation that Defendant Jason Head, PLC violated the above provisions "willfully and knowingly," it is liable under CAL. CIV. CODE § 1788.30(b). Defendant attempted to collect a consumer debt by falsely stating that a legal proceeding had been commenced. Defendant's conduct violates the clear purpose of the Rosenthal Act, which is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." CAL. CIV. CODE § 1788.1(b). Accordingly, this Court awards Plaintiff an additional $500 in damages under CAL. CIV. CODE § 1788.30(b).

### 3. CAL. CIV. CODE § 1788.17

Plaintiff also argues that she is entitled to yet another $1,000 in statutory damages under CAL. CIV. CODE § 1788.17. As stated above, this section basically creates a state cause of action for violations of the Fair Debt Act. It also subjects debt collectors to the remedies available in 15 U.S.C. § 1692k. Even though Plaintiff is correct that "[t]he remedies provided [in the Rosenthal Act] are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provision of law," CAL. CIV. CODE § 1788.32, this Court rejects her argument that she can recover damages under both CAL. CIV. CODE § 1788.17 and CAL. CIV. CODE § 1788.30(b).

Certainly, CAL. CIV. CODE § 1788.32 allows California plaintiffs to recover damages for violations of the Rosenthal Act in addition to any recovery they may obtain under the Fair Debt Act. It is also clear that CAL. CIV. CODE § 1788.17 is not an impermissible expansion of the Fair Debt Act. *See Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1064-65 (N.D. Cal. 2004). Nevertheless, if this Court were to allow Plaintiff to recover under the Rosenthal Act for a violation of the Fair Debt Act (CAL. CIV. CODE § 1788.17) after already granting her damages under the Fair

9

Debt Act (15 U.S.C. § 1692k) and the Rosenthal Act (CAL. CIV. CODE § 1788.30(b)), it would be permitting her repetitive, not cumulative, recovery. The Rosenthal Act does not permit plaintiffs to collect double damages. Plaintiff's counsel has attempted this argument many times in this district, and it has been consistently rejected. *See Bretana v. Int'l Collection Corp.*, 2010 WL 1221925, *2 (N.D. Cal. Mar. 24, 2010) ("Taken together, these provisions allow for a maximum cumulative award of $2,000 ($1,000 in [Fair Debt Act] statutory damages and $1,000 in [Rosenthal Act] statutory penalty), but do not allow for double recovery under the [Fair Debt Act]."); *Bankston v. PhyCom Corp.*, 2008 WL 4412252, *2-3 (N.D. Cal. Sept. 25, 2008) (rejecting the plaintiff's attempt to double recover under both CAL. CIV. CODE § 1788.30(b) and CAL. CIV. CODE § 1788.17); *Owens v. Brachfeld*, 2008 WL 3891958, *4 (N.D. Cal. Aug. 20, 2008) (rejecting the plaintiff's attempt for double recovery); *Napier v. Titan Mgmt. Servs., LLC*, 2008 WL 2949274, 3 (N.D. Cal. July 25, 2008) ("The court does not agree that CAL. CIV. CODE § 1788.17 entitles plaintiff to double recovery of the [Fair Debt Act] damages in addition to the damages awarded for the [Rosenthal Act] violation under CAL. CIV. CODE § 1788.30(b)."); *Mejia v. Marauder Corp.*, 2007 WL 806486, *11-12 (N.D. Cal. Mar. 15, 2007) (rejecting the plaintiff's argument for double recovery).

Plaintiff's request for $1,000 in damages under CAL. CIV. CODE § 1788.17 is denied.

**C. Attorney's Fees**

Both the Fair Debt Act and the Rosenthal Act impose liability for attorney's fees and costs on defendants found liable under their respective provisions. *See* 15 U.S.C. § 1692k(a)(3); CAL. CIV. CODE § 1788.30(c). "District courts must calculate awards for attorneys' fees using the 'lodestar' method." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citations omitted). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (quotation omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id.* (citations omitted). A "district court has a great deal of discretion in determining the reasonableness of the fee." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978

1  (9th Cir. 2008) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)) (quotation marks omitted).

Plaintiff's counsel represents that he spent 8.0 hours performing legal services on behalf of Plaintiff. Dkt. No. 13-2 ("Schwinn Decl."), at 10. This work included, more prominently, (1) 0.5 hours meeting with Plaintiff, (2) 1.0 hour researching Defendants, (3) 2.1 hrs drafting the complaint, (4) 0.5 hours drafting a request for default, (5) and 2.5 hours drafting a motion for default judgment. P.'s Mot., Ex. A, at 1-2. Nothing on the invoice appears out of the ordinary.[2] Even though it may have been possible for Plaintiff's counsel to perform his work more efficiently, eight hours to take a suit from the client meeting to final judgment seems reasonable.

Plaintiff's counsel represents that his hourly rate is $325.00, Schwinn Decl. 7, and requests that rate here. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Plaintiff's counsel claims that this hourly rate is comparable to the rates charged by attorneys of similar experience in the San Francisco Bay Area. *Id.* In his declaration, Plaintiff's counsel lists numerous courts in this area that have awarded him a rate of $325 per hour. *Id.* 7-8. Another attorney, Ronald Wilcox, stated in his declaration that the market rate for litigating similarly complex consumer law issues in the San Francisco Bay Area is between $280 and $465 per hour. Dkt. No. 13-4 ("Wilcox Decl."), at 4. Based on his experience, Wilcox represents that Plaintiff counsel's rate of $325 is reasonable. *Id.* Moreover, he provides citations to cases where the court awarded him an hourly fee of $325. *Id.* at 4-5. Recently, Judge Ware granted Plaintiff counsel's request for the same hourly rate, $325, based on nearly identical evidence. *See Silva v. Patenaude & Felix*, 2010 U.S. Dist. LEXIS 50758, *5-7 (N.D. Cal. May 12, 2010). Accordingly, this Court finds Plaintiff counsel's hourly rate of $325 is reasonable.

Using the lodestar method, Plaintiff is entitled to $2,600 in attorney's fees.

---

[2] Even though this does not affect the analysis, the Court, however, finds it curious that Plaintiff's counsel initially met with Plaintiff on December 18, 2008 but did not again perform billable work on her case until December 7, 2009. P.'s Mot., Ex. A, at 1.

11
Case No.: 09-CV-05768-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff also requests $444.73 in costs, the majority of which is the $350.00 court filing fee. *Id.* at 2-3. Because nothing on the invoice appears unnecessary, this Court awards Plaintiff her requested costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED in part and DENIED in part. Plaintiff is awarded $4,044.73 in damages, attorney's fees and costs according to the following:

Plaintiff's motion for default judgment against both Defendants for violation of the Fair Debt Act is GRANTED. Plaintiff's request for $1,000 in damages under 15 U.S.C. § 1692k is DENIED. Plaintiff is awarded $500 in damages.

Plaintiff's motion for default judgment against Defendant Jason Head, PLC for violation of the Rosenthal Act is GRANTED but the motion as to Defendant Jason Matthew Head is DENIED. Plaintiff's request for $1,000 in damages under CAL. CIV. CODE § 1788.30(b) is DENIED. Plaintiff is awarded $500 in damages.

Plaintiff's request for damages under CAL. CIV. CODE § 1788.17 is DENIED.

Plaintiff's request for $3,044.73 in attorney's fees and costs is GRANTED.

**IT IS SO ORDERED.**

Dated: November 4, 2010

*Lucy H. Koh*
LUCY H. KOH
United States District Judge